**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

B. MACON,

Plaintiff,

v. Civil Action No. 3:10cv260

E.I. DUPONT,

Defendant.

**MEMORANDUM OPINION**

Before the Court are Defendant E.I. DuPont's ("DuPont") Motion for Summary Judgment (Docket No. 66), Plaintiff B. Macon's Objection to Defendant's Motion for Summary Judgment ("Objection") (Docket No. 70), and DuPont's Motion to Strike Plaintiff's Reply in Opposition to Defendant's Reply ("Motion to Strike") (Docket No. 74). On August 22, 2011, the Court heard oral argument on the pending motions. This matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 636(c). For the reasons that follow, the Court will GRANT DuPont's Motion for Summary Judgment and Motion to Strike. Accordingly, the Court will OVERRULE Macon's Objection and will DISMISS WITH PREJUDICE Macon's Second Amended Complaint.

## I. Findings of Undisputed Facts[1]

### A. Macon's Employment with DuPont and Performance Under Supervisor Rodney Taylor

In 1997, DuPont initially hired Macon, an African-American male, to work as a process engineer at its Kinston, North Carolina manufacturing facility. Throughout the next several years, Macon worked at different DuPont facilities in various capacities.

In mid-September 2002, Macon voluntarily transferred to a process engineer position at DuPont's Spruance facility in Richmond, Virginia. The Spruance facility consists of several plants which manufacture different products.

In March 2003, Macon became the Day Operations Manager for Finishing at the Tyvek Plant within the Spruance facility. Rodney Taylor, an African-American male,[2] supervised

---

[1] Because the Court ultimately grants DuPont's Motion for Summary Judgment, the Court recites and views these facts in the light most favorable to Macon, the nonmoving party. It should be noted that Macon attempts to raise numerous factual disputes. However, the vast majority of these factual disputes are not material because they are not outcome determinative. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court further notes that Federal Rule of Civil Procedure 56 requires parties to support facts by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). In his Memorandum in Opposition to DuPont's Motion for Summary Judgment, Macon largely makes factual assertions without citing to any particular part of the record for support as required by Rule 56. Considering Macon's *pro se* status, the Court has nonetheless combed the record, including the exhibits attached to his memorandum in opposition, to determine if his assertions are properly supported and could give rise to a genuine issue of material fact which would preclude summary judgment.

[2] While the record reflects the race of Macon's supervisor and Macon's unit manager while Macon held the position of Day Operations Manager, the record is silent as to the race of Macon's supervisors while he held the position of a Six Sigma Black Belt. The Court thus cannot make reasonable inferences in DuPont's favor regarding the race of the decision-makers and whether their race might negate a discriminatory motive. *See, e.g., Demesme v. Montgomery Cnty. Gov't*, 63 F. Supp. 2d 678, 683 (D. Md. 1999) ("The fact that the decision makers were of the same protected class suggests no discriminatory motivation.").

Macon in this new position. Ron Lee, also an African-American male, served as the Unit Manager for the Tyvek Plant until some time in 2006.

At this time, the Spruance facility utilized a performance rating system for its non-union personnel. Each employee would receive an annual performance review accompanied by a performance rating, ranging from a Category 1 to a Category 5. Category 1 meant that the employee exceeded all expectations, while Category 3 meant the employee met all expectations. Category 4 meant the employee met some expectations but not others, and an employee receiving a Category 5 rating did not meet any expectations and risked potential discharge. The employee's immediate supervisor bore significant responsibility for the annual review and rating of an employee, but would also consult with the Unit Manager.

Shortly after Macon accepted the position at the Tyvek Plant, Taylor developed concerns about Macon's performance. Taylor observed that Macon did not manage the finishing process well and "struggle[d] in driving operational discipline, developing and establishing preventative systems that address root causes of poor performance." (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp.") Ex. B, Deposition of Benson D. Macon ("Macon Dep.") Ex. 3.) Based on Macon's performance, Taylor reduced Macon's responsibilities and gave Macon a Category 4 performance rating for 2003.

Macon disputed Taylor's assessment of his performance and complained to Tyvek Human Resources Consultant Bruce Harris. Taylor had given Macon no indication that he would receive a poor rating for the year and had failed to verbally discuss with Macon the reasons for the Category 4 rating. Macon did not contend that Taylor had determined the performance rating based on Macon's race and even now does not express any belief that Taylor or Lee

discriminated against him. After speaking with Macon and Taylor, Harris determined that Taylor based the performance rating on legitimate performance concerns.

### B. Macon's Performance Under Supervisor Mike Archie

In March 2004, Macon accepted a Six Sigma Black Belt position within the Tyvek Plant. As a Black Belt, Macon received specific projects and had a duty to find solutions that would increase efficiencies and solve operational problems. These solutions would be presented to the process owners or internal customers, and if the process owners or internal customers rejected the proposed solutions, a Black Belt would need to find acceptable alternative solutions.

At the time of Macon's transfer and until early 2007, Mike Archie served as Macon's supervisor. Shortly after Macon's transfer, Archie met with Macon to discuss performance expectations and what Macon needed to accomplish to receive a Category 3 rating for the year. Archie, however, developed concerns regarding Macon's performance in 2004. Although Macon had generated good ideas regarding the projects, Macon was slow in implementing the ideas and did not complete projects as expected. Because Macon met some but not all expectations, Archie gave Macon a Category 4 performance rating for 2004.

In 2005, Archie did not see improvement in Macon's performance. Archie noted that Macon had problems working and communicating with the process owners and again noted timeliness concerns. Based on these performance concerns, Archie gave Macon a Category 4 performance rating for 2005. Archie had given Macon no indication that he would receive a poor rating for the year.

Macon met with Ron Lee and Linda Derr, the head of human resources, to dispute his 2005 performance rating.[3] Macon indicated that his 2005 performance rating was inaccurate but did not contend it was the product of racial discrimination. Lee acknowledged that the documents[4] Macon presented contradicted Archie's reviews.[5] Derr likewise acknowledged that it appeared Macon was being "picked on." (Macon Aff. ¶ 21.) Derr spoke to Macon and Archie, separately and jointly, to ensure that performance expectations were clearly communicated. Archie also prepared a performance assessment and development plan for Macon and arranged to meet bi-weekly to discuss and remedy any performance issues. The performance assessment and development plan cautioned: "Continued ranking in category 4 for another year is not possible. . . . [Macon] must show a significant improvement in order to maintain his current position. Without sustained improvement over the next several months [Macon] could be moved to category 5 (unsatisfactory)." (Def.'s Mem. Supp. Ex. F, Declaration of Mike Archie ("Archie Decl.") Ex. 1.)

---

[3] Macon challenges Archie's assessment of his performance in 2005, stating that he "sent out numerous emails, scheduled numerous meetings with process owner and team members, made office visits, phone calls, followed up with individuals (subject matter experts) that [he] was referred to by team members, etc. and provided process owners with bi-weekly or sometime[s] monthly status reports, and came to work [during] off hours." (Pl.'s Aff. Opp'n Def.'s Mot. Summ. J. ("Macon Aff.") ¶ 12.)

[4] Macon's Affidavit indicates that he "displayed data and charts and documents to support [his] case" during this meeting. (Macon's Aff. ¶ 18.) Macon, however, failed to present these documents to the Court as evidence in this matter.

[5] For support, Macon cites to Exhibit Z, a digital voice recording. Exhibit Z has not been properly identified or authenticated and is therefore not proper evidence before the Court. Even if it were properly identified and authenticated, the conversation recorded is incomprehensible due to the poor quality of the recording. Further, Exhibit Z is duplicative evidence because Macon's affidavit describes this meeting and the conversation that ensued.

In 2006, Macon's performance improved, and Archie noted that Macon successfully developed projects and moved them to completion. Because Macon's performance met all expectations, Archie gave Macon a Category 3 rating for 2006. In Macon's view, his performance did not change between 2005 and 2006.

At the same time Archie supervised Macon, he also supervised Marilyn Nicholas, another African-American Black Belt. Based on Nicholas's superior performance, Archie gave her good performance reviews and ratings.

### C. Macon's Performance Under Interim Supervisor Jim Addison and Macon's Applications for New Positions Within DuPont

In early 2007, Archie retired, and Jim Addison, Tyvek's Technical Group Manager, served as the interim supervisor for the Tyvek Six Sigma Black Belts. Addison developed concerns about Macon's performance on a crushed core project due to complaints from process owners about Macon. Addison, however, did not share these concerns with Macon.

During this time, Addison also observed Nicholas's performance and believed her to be a strong performer. Nicholas transferred to a new assignment during the time Addison served as the interim supervisor. Macon approached Addison and complained that Nicholas had transferred to a new assignment before he did. In response, Addison indicated a transfer would be difficult due to Macon's past performance ratings.

Starting in 2007, Macon began seeking a new assignment and unsuccessfully applied to many positions within DuPont. For the vast majority of these positions, Macon does not know who ultimately was selected for the position, who made the hiring decision, or the reasons for the ultimate selection.

**D. Macon's Performance in 2007 Under Supervisor Marilee Haynes[6] and Continued Search for a Transfer Within DuPont**

In September 2007, Marilee Haynes arrived as Archie's permanent replacement as supervisor of Tyvek's Six Sigma Black Belts. Haynes immediately developed concerns with Macon's performance, observing that he struggled with the crushed core project, failed to meet deadlines established on other projects, and did not communicate effectively with process owners.

In October 2007, Macon applied for a process engineer electronics position at the DuPont facility located in Bayport, Texas. Macon interviewed with Heidi Martelock, the job sponsor, and also spoke with the operations people at the Bayport facility. Martelock had received Macon's performance information and had contacted Haynes, but Haynes declined to provide much information because she had just started as Macon's supervisor. Macon was not selected for the position due to "concerns regarding his communications with the operators in the field." (Def.'s Mem. Supp. Ex. I, Declaration of Heidi Martelock ¶ 6.) The hiring decision was not based on Macon's performance ratings. Martelock, however, contacted Macon to express concern about his prior performance ratings of Category 4 even though his most recent rating had been raised to a Category 3.

During a meeting, Haynes informed Macon that he likely would not sustain a Category 3 rating for 2007 and communicated her concerns about his performance. Macon disputed the

[6] The 2007 and 2008 performance ratings issued by Haynes are the only challenged performance ratings properly before the Court. Macon's Second Amended Complaint does not challenge his 2006 performance rating of 3. This Court dismissed Macon's challenges to earlier performance ratings as barred by the applicable statutes of limitations. In the interests of clarity, the Court nonetheless includes factual information predating the claims before the Court.

accuracy of Haynes's concerns. Based on her view of Macon's performance, Haynes refused to support a transfer to another position within DuPont.

Based on her observations of Macon's performance, Haynes gave Macon a Category 4 rating for 2007. Haynes supervised three to four Black Belts in 2007, two of whom were African-American. No other Black Belts under her supervision received a Category 4 rating in 2007.

### E. Macon's Performance in 2008 Under Supervisor Marilee Haynes and Voluntary Resignation

In March 2008, Haynes prepared a development plan for Macon. The development plan noted that Macon "must show significant improvement in order to maintain his current position. Without sustained improvement over the next several months, [Macon] could be moved to a Category 5 (Unsatisfactory)." (Def.'s Mem. Supp. Ex. E, Declaration of Marilee Haynes ("Haynes Decl.") ¶ 11 & Ex. 1.)

In April 2008, Macon applied for a maintenance and reliability global services position in DuPont's Wilmington, North Carolina facility. Macon interviewed for but did not receive the position. Haynes spoke with the hiring manager for this position, Kyle Braswell, before and after the interview and shared information on Macon's performance ranking and development plan details. Braswell informed Macon that he was not selected for the position because his salary was too low. Macon does not know who was ultimately selected for the position.

Also in April 2008, Macon approached Clarence Campbell, the human resources manager for the Spruance facility, to express his disagreement with Haynes's evaluation of his performance in 2007. Macon indicated that Haynes's evaluation was inaccurate and unfair, but

did not complain of racial discrimination. Campbell spoke to Macon, Haynes, and Addison and worked with Haynes to redraft the March 2008 development plan to further clarify goals and areas that needed improvement. In July 2008, Haynes provided Macon with a modified development plan, as well as Critical Operating Tasks and Goals. If Macon completed the objectives listed in the Critical Operating Tasks and Goals, he would be on track to receive a Category 3 performance rating. Haynes met with Macon on a regular basis to discuss his performance on projects.

From May to July 2008, Macon contacted representatives within human resources to complain of disparate treatment due to race and was eventually told to file a formal charge to initiate an investigation. In August 2008, Macon e-mailed a formal complaint about racial discrimination to DuPont human resources personnel. Karen Smith, Human Resources Operation Leader, investigated by speaking with Macon and Haynes and reviewing documentation about Macon's performance. Smith determined that Haynes based Macon's 2007 performance review and rating on legitimate reasons.

Macon's performance did not improve in 2008. Haynes noted that Macon asked to be removed from the crushed core project, failed to make timely progress on other projects, and failed to communicate adequately with process owners or follow through with their suggestions. Haynes received numerous complaints about Macon from the process owners, one process owner requested that a project be cancelled due to frustration with Macon's performance, and another requested that Macon be removed from the project.

Based on these observations and complaints, Haynes gave Macon a poor performance review for 2008 because he was not meeting expectations. Macon's 2008 performance review

indicated that Macon "must show significant improvement in his performance by April 1, 2009 or he will be subject to corrective action up to and including separation." (Macon Dep. Ex. 13, at 5.) Macon disagreed with this performance review. In January 2009, Macon voluntarily resigned before an official performance rating had been assigned.

Throughout 2008, Macon had been actively looking for jobs outside of DuPont. Starting in February 2009, Macon took a Six Sigma position at a higher pay rate with Herren & Associates.

## II. Procedural Posture

On April 21, 2010, Macon, proceeding *pro se*, filed a Complaint against DuPont in this Court. (Docket No. 1.) Macon filed a Second Amended Complaint against DuPont on May 13, 2011, asserting the following claims: (1) disparate treatment based on race, in violation of Title VII[7] of the Civil Rights Act; (2) disparate treatment based on race, in violation of 42 U.S.C. § 1981;[8] and, (3) retaliation, in violation of Title VII.[9] (Docket No. 53.) In Macon's disparate

---

[7] 42 U.S.C. § 2000e *et seq.*

[8] Section 1981 provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

[9] By May 13, 2011 Order and Memorandum Opinion, the Court granted Macon leave to file his Second Amended Complaint but narrowed the claims on which he could proceed. (Docket Nos. 51, 52.) Finding that amendment would be futile, the Court did not grant leave to amend to include state law claims. Further, the Court found that Macon's Title VII claims must be based on discrete acts of discrimination occurring on or after November 10, 2007, while his

treatment claims, Macon challenges his 2007 Category 4 performance rating, alleging that "DuPont discriminatorily lowered [his] performance ratings because he is African American, thereby causing him not to be selected for promotions and assignments that he applied for" (2d Am. Compl. ¶ 1).[10] In his retaliation claim, Macon contends he engaged in protected activity by filing a formal complaint of race discrimination in August 2008 and thereafter DuPont retaliated by giving him a low performance rating in December 2008 and indicating that his separation was preferred by April 2009. DuPont seeks summary judgment on Macon's claims.[11]

## III. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson*, 477 U.S. at 248-50. Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

---

§ 1981 claim must be based on discrete acts of discrimination occurring on or after April 21, 2006.

[10] Macon's Second Amended Complaint does not assert an independent claim for failure to promote on the basis of race. Instead, Macon contends that he was prohibited from being selected for promotions due to his lowered performance ratings, which were based on discrimination.

[11] DuPont included proper *Roseboro* notice in its Motion for Summary Judgment, advising Macon of the necessity of filing a proper response. *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

## IV. Analysis

### A. Macon's Objection and DuPont's Motion to Strike

In his Objection, Macon argues that the Court should deny DuPont's Motion for Summary Judgment because Dupont's motion refers to performance "reviews" instead of performance "ratings." (Pl.'s Objection to Def.'s Mot. Summ. J. 2.) Macon argues that these two words have "entirely different meanings" such that DuPont's motion does not apply to the claims asserted in his Second Amended Complaint. (Pl.'s Objection to Def.'s Mot. Summ. J. 1-2.)

The Court finds no merit in Macon's Objection. First, the evidence before the Court indicates that DuPont employees received an annual performance review accompanied by a rating based on that review. The performance reviews and ratings necessarily interrelate. Further, although DuPont's motion references performance reviews, it also consistently refers to performance ratings. The Court OVERRULES Macon's Objection. (Docket No. 70.)

DuPont's Motion to Strike requests that the Court strike Macon's Reply in Opposition of Defendant's Reply and its accompanying exhibits. This Court's local rules allow the filing of responsive briefs and rebuttal briefs and provide that "[n]o further briefs or written communications may be filed without first obtaining leave of Court." E.D. Va. Loc. Civ. R. 7(F)(1). This rule ensures "that parties file complete motions and accompanying documentation and that parties not make supplemental arguments or reassertions upon the whim of the parties." *LG Electronics Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 809 (E.D. Va. 2001).

Macon filed his sur-reply on August 11, 2011 without leave of court and in violation of the local rules. (*See* Docket No. 73.) Further, Macon has failed to explain why the new factual contentions and supporting documentation were not contained in his memorandum in opposition. *Scott v. Health Net Fed. Servs., LLC*, No. 1:10cv930, 2011 WL 3489612, at *5 (E.D. Va. Aug. 9, 2011). The Court thus GRANTS DuPont's Motion to Strike and declines to consider Macon's sur-reply or accompanying exhibits.[12]

**B. Macon's Disparate Treatment Claims**

Macon's disparate treatment claims under Title VII and § 1981 challenge his 2007 Category 4 performance rating, alleging that "DuPont discriminatorily lowered [his] performance ratings because he is African American, thereby causing him not to be selected for promotions and assignments that he applied for." (2d Am. Compl. ¶ 1.) The record here establishes that Macon has failed to demonstrate a prima facie case of disparate treatment based on race. Even if

---

[12] The Court notes that, even were it to consider them, the sur-reply and accompanying exhibits do not appear as if they would not alter the determinations that follow.

Macon could present a prima facie case, he has failed to show that DuPont's proffered legitimate, nondiscriminatory reasons for the lowered performance rating are pretextual. Thus, the record here establishes that Macon's disparate treatment claims cannot survive DuPont's summary judgment motion.

### 1. Applicable Law

Under Title VII of the Civil Rights Act of 1964, it is "an unlawful employment practice for an employer . . . to . . . discriminate against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Section 1981 similarly guarantees equal rights to persons no matter their race. *Id.* § 1981(a). When asserting a claim of employment discrimination pursuant to Title VII or § 1981, Macon may prove his claim through direct or circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003); *see Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). When, as here, the case does not involve direct evidence of discrimination,[13] Macon must rely on the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, the plaintiff must first demonstrate a prima facie case of his claim. *Id.* at 802. To establish a prima facie case of disparate treatment based on race, Macon must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was

[13] Relying on two investigative memos, Macon attempts to present direct evidence of discrimination. These investigative memos constitute inadmissible hearsay and are not properly authenticated. Even if the Court could consider these investigative memos, they contain only generalized allegations regarding the racial climate at DuPont's Spruance facility and specific allegations regarding different supervisors. These documents contain no specific allegations probative of disparate treatment toward Macon.

performing at a level that met his employer's legitimate expectations; and, (4) that he was treated differently than similarly situated employees outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc); *Brockman v. Snow*, 217 F. App'x 201, 206 (4th Cir. 2007); *Scott*, 2011 WL 3489612, at *6.

After the plaintiff has established a prima facie case, the burden shifts to the employer to provide a legitimate reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. The employer's burden to provide a legitimate, nondiscriminatory reason is one of production, not persuasion, and does not involve a credibility assessment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). Although the burden of production shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Therefore, if the employer provides a legitimate, nondiscriminatory reason for an adverse employment action, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

The plaintiff need only produce sufficient evidence of the falsity of the employer's proffered reason for the adverse employment action. *Reeves*, 530 U.S. at 146-49 (rejecting the "pretext plus" requirement, which required plaintiffs to show "'*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct" (*Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377-78 (4th Cir. 1995) (*quoting St. Mary's Honor Ctr.*, 509 U.S.

at 515))).[14] A plaintiff fails to demonstrate an employer's pretextual rationale for the adverse employment action "by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it. The former would not create a 'genuine' dispute, the latter would fail to be 'material.'" *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) (internal citations omitted). Moreover, the plaintiff's own determination that the employer's proffered reason for the adverse action is pretextual carries no weight. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (*citing Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997), *overruled on other grounds by Nat'l R.R. Passenger Corp.*, 536 U.S. 101, 105 (2002)).

At the conclusion of the court's *McDonnell Douglas* analysis, a prima facie case combined with sufficient evidence of the employer's pretextual reason for the adverse employment action may permit a finding that the employer discriminated against the plaintiff. *Reeves*, 530 U.S. at 148.

### 2. Macon Has Failed to Demonstrate a Prima Facie Case for Disparate Treatment Based on Race

Macon has met the first element of his prima facie case: Macon, an African-American male, belongs to a protected class. The Court will also assume, without deciding, that Macon can demonstrate the second element of his prima facie case, an adverse employment action, based on

[14] Some courts in the Fourth Circuit appear to continue to apply the "pretext plus" analysis set forth in *St. Mary's Honor Center v. Hicks*. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 215 (4th Cir. 2007) (finding that plaintiff had failed to show that the employer's proffered reason for firing him was false where the plaintiff only offered as pretext evidence that the employer had changed his date of termination).

his low performance ratings resulting in non-selection for promotions and transfers.[15] Macon, however, has failed to demonstrate the third and fourth elements of his prima facie case.

Macon cannot show that at the time he received his 2007 performance rating he was performing at a level that met DuPont's legitimate expectations. Both of his supervisors in 2007 had concerns about his performance. Process owners complained to Addison about Macon's performance on the crushed core project, and according to Haynes, Macon struggled with the crush core project, failed to meet deadlines established on other projects, and did not communicate effectively with process owners. Based on these observations, Macon's supervisors determined that his performance warranted a Category 4 rating because he met some expectations but did not meet other expectations. While Macon generally disputes the validity of any performance concerns, he has failed to provide any documentary evidence for support, and his own testimony cannot establish a genuine issue as to whether he was meeting DuPont's expectations. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Evans v. Techs. Applications*

---

[15] "[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377 (4th Cir. 2004) (*quoting Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850, 854 (8th Cir. 2000)); *Zackrie v. Lockheed Martin Corp.*, No. RWT 04-1864, 2006 WL 2849767, at *4 (D. Md. Oct. 2, 2006).

Here, Macon's claim that his poor performance evaluation resulted in his non-selection for promotions and transfers appears to be based on nothing more than speculation and conjecture, and as such, fails to create a genuinely disputed issue of fact. *See id.* at 377-78. Further, the non-selection for the vast majority of the referenced promotions and/or transfers occurred before Macon received his 2007 performance rating, at a time when Macon had a Category 3 performance rating for 2006.

Macon, however, has produced evidence of one interview, the Wilmington interview, occurring after his 2007 performance rating. Haynes spoke to the hiring manager before and after Macon's interview and shared information on Macon's performance rating and development plan. The Court thus assumes, without deciding, that Macon has demonstrated an adverse employment action.

*& Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff." (*quoting Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980))). Indeed, the admissible evidence before the Court shows that Macon initially challenged the evaluations only as inaccurate, and not until 2008 did he allege they were inaccurate because of discriminatory bias.

Macon also has failed to demonstrate that he was treated differently than similarly situated employees outside his protected class. In briefing, Macon contends that Dave Kermani and David Jolley failed to timely complete projects and did not receive lowered performance ratings. Macon, however, fails to cite to, nor could this Court locate, any evidence in this record that supports this factual allegation. Regardless, Macon has not demonstrated Kermani's or Jolley's race, who their supervisors were, what their performance ratings were, or that process owners complained about their performance as well. Macon has thus failed to demonstrate that they are similarly situated employees outside his protected class.[16]

---

[16] Macon's other attempts at demonstrating this fourth element fare no better. First, Macon contends that Donna Copley, a Caucasian Six Sigma Black Belt, did not complete a single project in 2006 but was allowed "to facilitate several Green Belt training courses." (Macon Aff. ¶ 15.) Even presuming any such evidence pertained to a relevant time frame, Macon fails to demonstrate what Copley's performance ratings were or that she displayed other performance issues similar to Macon's, such as problems communicating with process owners or receiving complaints from process owners.

Macon also contends that Marvin Wright, a Caucasian Day Operations Manager, told Macon personally that Wright received a Category 5 performance rating which was raised to a Category 3 after he complained to human resources. This evidence appears to rest on inadmissible hearsay. Even if the Court were to consider that evidence, Macon was a Six Sigma Black Belt at the time of his 2007 Performance rating, and had not been a Day Operations Manager for years. Likewise, nothing suggests that Macon and Wright were both supervised by Haynes. Macon also fails to provide a time frame for Wright's Category 5 performance rating or the subsequent raise to a Category 3. Macon thus has not demonstrated that Wright was a similarly situated employee. *See, e.g.*, *Monk v. Potter*, 723 F. Supp. 2d 860, 877 (E.D. Va. 2010) ("[T]wo employees who do not report to the same supervisor, do not have the same job title, or

### 3. Macon Fails to Show Pretext

Even if Macon could establish a prima facie case of disparate treatment based on race, Macon could not survive summary judgment because he has failed to show pretext. Pursuant to the *McDonnell Douglas* framework, once a plaintiff has met the requirements of a prima facie case, the defendant must then put forth a legitimate reason for the adverse employment action it took against the plaintiff. *McDonnell Douglas*, 411 U.S. at 802. In this case, DuPont satisfies this burden. Haynes arrived at Macon's 2007 performance rating based on legitimate, non-discriminatory performance concerns.

Because DuPont has offered non-discriminatory justifications for Macon's lowered performance rating, the presumption of discrimination has "'drop[ped] out of the picture.'" *Reeves*, 530 U.S. at 143 (*quoting St. Mary's Honor Ctr.*, 509 U.S. at 511). The burden then shifts back to Macon to show evidence of pretext, and he fails to meet this burden. *See Burdine*, 450 U.S. at 253.

No evidence before the Court suggests that Haynes lowered Macon's performance rating for any reason other than her belief that Macon met some performance expectations but failed to meet others. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (2000). Macon merely disputes the accuracy of the process owner's complaints against him, claims he communicated effectively

---

do not have the same responsibility level, are not similarly situated." (*citing Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008))).

In his sur-reply, Macon generally contends that the fact that he completed more projects than any other Six Sigma Black Belt shows disparate treatment. Even were the Court to consider Macon's sur-reply and supporting exhibits, Macon would still fail to meet the fourth element of his prima facie case because Macon fails to rest his claim on admissible evidence and fails to demonstrate that these other employees displayed performance issues similar to that of Macon's.

with the process owners, and contends he met project deadlines in a timely manner. While Macon disagrees with Haynes's assessment of his performance, the Court's sole concern is:

> "whether the reason for . . . the defendant['s adverse action] was discriminatory. Thus, when an employer articulates a reason for [taking an adverse action against] the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [adverse action]."

*DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (*quoting Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410-11 (7th Cir. 1997)). Macon has failed "to offer any support for his claims that the evaluation involved falsehoods, as opposed to mere disagreements over his performance." *James*, 368 F.3d at 378. The Court "must keep in mind that 'Title VII is not a vehicle for substituting the judgment of a court for that of the employer.'" *DeJarnette*, 133 F.3d at 298-99 (*quoting Jiminez*, 57 F.3d at 377). Thus, Macon has failed to prove that DuPont's legitimate, nondiscriminatory reasons were pretextual, and his disparate treatment claims must be DISMISSED WITH PREJUDICE.

**C. Macon's Retaliation Claim**

In his retaliation claim, Macon contends he engaged in protected activity by filing a formal complaint of race discrimination in August 2008, and thereafter DuPont retaliated by giving him a low performance rating in December 2008 and indicating that his separation was preferred by April 2009. This claim cannot survive summary judgment because Macon fails to establish a prima facie case.

**1. Applicable Law**

Section 704(a) of Title VII contains an anti-retaliation provision, which provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has

> made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. 2000e-3(a). The anti-retaliation provision prevents "employer[s] from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). Courts interpret this provision broadly because the accomplishment of the goals of Title VII depends on the "cooperation of employees who are willing to file complaints and act as witnesses." *Id.* at 67.

To succeed on a retaliation claim in the absence of direct evidence, a plaintiff must first establish a prima facie case of retaliation. A plaintiff must show that: (1) the plaintiff was engaged in a protected activity; (2) the employer acted adversely against the plaintiff; and, (3) the protected activity was causally connected to the adverse action. *Laughlin v. Metro. Wash. Airports*, 149 F.3d 253, 258 (4th Cir. 1998).

Once a plaintiff has established a prima facie case of retaliation, the Court must then analyze the claim for retaliation under the *McDonnell Douglas* burden-shifting scheme, as discussed above. *See McDonnell Douglas Corp.*, 411 U.S. at 802-03. Once the employer provides a legitimate, nonretaliatory reason for the adverse employment action, the plaintiff must show that the reasons offered by the employer were a pretext for unlawful retaliation. *Burdine*, 450 U.S. at 253.

**2. <u>Macon Has Failed to Establish a Prima Facie Case of Retaliation</u>**

Macon has failed to establish a prima facie case of retaliation. The record before the Court demonstrates that, although Haynes gave Macon a negative performance review for 2008, Macon voluntarily resigned prior to receiving an official performance rating. His 2008

performance review included a statement indicating that Macon "must show significant improvement in his performance by April 1, 2009 or he will be subject to corrective action up to and including separation." (Macon Dep. Ex. 13, at 5.) Macon, however, has failed to demonstrate any casual connection between his August 2008 complaint and his 2008 performance review.[17] "Clearly [Macon] believes that [he] was retaliated against, but that alone is insufficient." *Brackman v. Fauquier Cnty.*, 72 F. App'x 887, 894 (4th Cir. 2003). The evidence before the Court contradicts an inference of a causal connection.

---

[17] DuPont also contends that Macon has failed to demonstrate an adverse action in his retaliation claim. Because Macon has clearly failed to establish any casual connection between his 2008 complaint and his 2008 performance review, the Court need not reach this argument. Nevertheless, based on the record before the Court, Macon likely would be unable to demonstrate an adverse action based on his 2008 performance review. Although the Court assumed, without deciding, that Macon had demonstrated an adverse employment action for purposes of his disparate treatment claims, Macon relies on a different adverse action for his retaliation claim. In his disparate treatment claims, Macon asserted that his poor performance rating in 2007 resulted in his non-selection for promotion.

In this retaliation claim, Macon contends that his receipt of a different poor performance review, in 2008, and the statement contained therein threatening corrective action constituted an adverse action. This performance review and accompanying statement, however, do not say that Macon *will* be removed in April of 2009, and it likely could not serve as the adverse action Macon contends when referring to it as a means of constructive discharge. The record here instead shows that DuPont indicated that Macon must improve to stay, or suffer a consequence (leaving) if he did not improve prior to April of 2009. No evidence suggests that any form of disciplinary action was taken against Macon. Macon voluntarily resigned, taking another job at a higher pay rate, before any corrective action was taken against him.

On this record, it does not appear that this poor evaluation alone would constitute an adverse action. *See White*, 548 U.S. at 57 (explaining that the anti-retaliation provision "covers those (and only those) *employer actions* that would have been *materially adverse* to a *reasonable* employee or job applicant" and that "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination" (emphasis added)). This is true in part because this evaluation follows a series of similar negative commentary on Macon's work made prior to any protected conduct, thereby negating an inference it stemmed from retaliatory intent.

The record indicates that, throughout the years, numerous supervisors had concerns with Macon's performance which resulted in Category 4 performance ratings and performance reviews indicating that significant improvement was needed. The development plan prepared by Archie in 2006 included a warning that Macon "must show a significant improvement in order to maintain his current position. Without sustained improvement over the next several months [Macon] could be moved to category 5 (unsatisfactory)." (Archie Decl. Ex. 1.) Both development plans prepared by Haynes, in March and July 2008, contained very similar warnings. (Haynes Decl. Exs. 1 & 2.) All three development plans were issued prior to Macon's August 2008 complaint. Thus, the evidence suggests that years of performance concerns and low performance ratings culminated in the 2008 performance review and the warning contained therein. Macon has failed to demonstrate any casual connection. Accordingly, Macon's retaliation claim must be DISMISSED WITH PREJUDICE.[18]

---

[18] In briefing, Macon suggests that DuPont retaliated against him by deactivating his work pass, sending police to his home, making false statements, ignoring him in meetings, and failing to conduct an investigation into his complaints about discrimination. Because Macon's Second Amended Complaint fails to allege these instances of retaliation, the Court will not consider these arguments. Indeed, Macon has presented no evidence supporting his arguments made in briefing regarding false statements, ignoring him in meetings, and failing to conduct an investigation.

The record, however, does contain evidence about his work pass deactivation and police arriving at his home. These events occurred in mid-December 2008. Even if the Court were concerned about the nature of these events, the Court would find that Macon has failed to demonstrate a causal connection between his August 2008 complaint and these December 2008 instances. The four-month period which passed between Macon's complaint and these instances, standing alone, would not provide proof of a causal connection. *See Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006).

Macon's sur-reply also alludes to a constructive discharge claim, arguing that his January 2009 resignation was not a voluntary resignation to take another job at a higher pay, but instead constituted constructive discharge based on DuPont's December 2008 actions. Because Macon's Second Amended Complaint fails to allege constructive discharge, the Court will not consider this argument. Even if the Court were to consider it, the Court would find that Macon has failed

## V. Conclusion

For the foregoing reasons, the Court will GRANT DuPont's Motion for Summary Judgment (Docket No. 66), OVERRULE Macon's Objection (Docket No. 70), and GRANT DuPont's Motion to Strike (Docket No. 74). Accordingly, the Court will DISMISS WITH PREJUDICE this action.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 10-14-11

to demonstrate that DuPont deliberately made his working conditions intolerable, thereby forcing him to quit. *See James*, 368 F.3d at 378. Further, the evidence before this Court, including Macon's own deposition testimony, contradicts Macon's contention that he was constructively discharged.